IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARITZA SANCHEZ-ORTIZ,

Plaintiff

v.                                          CIVIL 12-1655 (JA)

COMMISSIONER OF SOCIAL SECURITY,

Defendant

OPINION AND ORDER

On August 10, 2012, plaintiff filed this petition for judicial review of a final decision of the Commissioner of Social Security which denied her application for a period of disability and Social Security disability insurance benefits. The answer to the complaint was filed on January 15, 2013 (Docket No. 7). Plaintiff filed a memorandum against the final decision of the Commissioner on May 20, 2013 (Docket No. 21) and the defendant filed a memorandum in support of the final decision on July 23, 2013 (Docket No. 24).

The only issue for the court to determine is whether the final decision that plaintiff is not under a disability is supported by substantial evidence in the record when looking at such record as a whole. In order to be entitled to such benefits, plaintiff must establish that she was disabled under the Social Security Act from September 17, 2003, the alleged onset date of disability, to December 31, 2007, the date plaintiff last met the earnings requirements for disability benefits under the Act. See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 n.3 (1st Cir. 1987).

Plaintiff filed her first application for disability benefits on September 30, 2002 claiming disability beginning on December 21, 2001. (Tr. at 210), but

CIVIL 12-1655 (ADC                               2

moved to withdraw the request fifteen months later as premature. (Tr. at 149). The motion was granted and that application was dismissed on June 24, 2004. (Tr. at 83). Plaintiff filed a second application for a period of disability and disability insurance benefits on February 11, 2004. The application was denied initially and on reconsideration. A hearing was requested but the request was then withdrawn and a decision was made without a hearing. (Tr. at 101, 106).

After evaluating the evidence of record, Administrative Law Judge John D. McNamee-Alemany entered the following findings on September 11, 2007:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
2. The claimant has not engaged in substantial gainful activity since February 7, 2002, the alleged onset date (20 CFR § 404.1571 et seq.).
3. The claimant has the following severe combination of impairments: moderate carpal tunnel syndrome, cervical and lumbar sprains and affective disorder. (20 CFR § 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that she should be afforded the opportunity to alternate positions, refrain from repeated twisting, crouching, kneeling, balancing, or heavier exertions. Climbing could be contraindicated during exacerbations of pain. Her depression limits ability to perform complex tasks or deal with the public, but does not significantly interfere with memory, attention or concentration.
6. The claimant is capable of performing past relevant work as assembler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
7. The claimant has not been under a disability, as defined in the Social Security Act, from February 7, 2002 through the date of this decision (20 CFR § 404.1520(f)).

Tr. at 74-81.

CIVIL 12-1655 (ADC                3

The finding of the Commissioner reflects an application of step four of the sequential evaluation process. See 20 C.F.R. § 404.1520(e).  At step four the initial burden is on the claimant to show that she can no longer perform her former work because of her impairment(s).  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996); see Santiago v. Sec'y of Health & Human Servs., 944 F.2d 1, 5 (1st Cir. 1991).  Thence, the Commissioner must compare the physical and mental demands of the past work with the current functional capability.  See 20 C.F.R. § 404.1560(b).  At this stage, the administrative law judge is entitled to credit a claimant's own description of her former job duties and functional limitations but has some burden independently to develop the record.  See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d at 17; Santiago v. Sec'y of Heath & Human Servs., 944 F.2d at 5-6.

Petitioner sought a Request for Review of Hearing Decision on October 31, 2007. (Tr. at 66).  By Order of the Appeals Council dated November 13, 2009, the Appeals Council granted the request for review under the error of law provision of 20 C.F.R. § 404.970, vacated the hearing decision and remanded the case to the administrative law judge for further proceedings.  (Tr. at 63-64).  It noted that a form by a treating physician, Dr. Jose Crespo Rafols, who indicated extreme physical limitations on the part of plaintiff, was not addressed in the decision, thus requiring further evaluation.  (Tr. at 63). The Appeals Council also noted petitioner's carpal tunnel syndrome as a severe impairment, but no manipulation restrictions were identified from said impairment.  A State Agency physician had indicated that petitioner's ability to finger, feel and handle were limited and that

CIVIL 12-1655 (ADC                               4

her past work as assembler required frequent fingering, feeling and handling, thus warranting further evaluation.

The administrative law judge was directed to give consideration to the treating source opinion of Dr. Crespo Rafols, and explain the weight given to such opinion.  The administrative law judge was also directed to give consideration to plaintiff's maximum residual functional capacity and provide appropriate rationale in support of the assessed limitations, including the carpal tunnel syndrome. (Tr. at 64). The administrative law judge was also directed, if warranted, to obtain evidence from a vocational expert to clarify the effect of the assessed limitations on plaintiff's ability to perform her past relevant work, and as applicable to her remaining occupational base.

Upon remand, after evaluating the evidence of record, Administrative Law Judge Hortensia Haaversen entered the following findings on May 4, 2010:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2007.
2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of September 17, 2003 through her date last insured of December 31, 2007. (20 CFR § 404.1571 et seq.).
3. Through the date last insured, the claimant has the following severe impairments: major depression, a schizoaffective disorder, and a borderline personality disorder. (20 CFR § 404.1520(c)).
4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds, through the date last insured, the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: ability to understand, execute and

CIVIL 12-1655 (ADC                5

        remember only simple instructions and work-like procedures, sustain attention and maintain persistence and pace for two-hour intervals, and interact with others in a low contact setting.
6. Through the date last insured, the claimant was unable to perform her past relevant work (20 CFR 404.1565)
7. The claimant was born on December 27, 1971 and was 36 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
8. The claimant has at least a high school education and is able to communicate in English (20 CFR 1564).
9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled", whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
10. Through the date last insured, considering the claimant's age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.156(a)).
11. The claimant was not under a disability, as defined in the Social Security Act, at any time from September 17, 2003, the alleged onset date, through December 31, 2007, the date last insured. (20 CFR § 404.1520(g)).

Tr. at 19-30.

        The administrative law judge ended the sequential inquiry at step five. At this level, it has already been determined that the claimant cannot perform any work she has performed in the past due to a severe impairment or combination of impairments. The inquiry requires a consideration of the claimant's residual functional capacity as well as the claimant's age, education, and past work experience to see if the claimant can do other work. If the claimant cannot do other work, a finding of disability will follow. See 20 C.F.R. § 404.1520(f). At step five, the Commissioner bears the burden of determining that significant jobs exist in the national economy given the above factors. See Nguyen v. Chater, 172 F.3d 31 (1st Cir. 1999); Lancellotta v. Sec'y of Health & Human Servs., 806 F.2d 284,

284 (1st Cir. 1986); Vázquez v. Sec'y of Health & Human Servs., 683 F.2d 1, 2 (1st Cir. 1982); Rodriguez-Gonzalez v. Astrue, 854 F. Supp. 2d 176, 180 (D.P.R. 2012); Hatcher v. Commissioner of Social Security, 770 F. Supp. 2d 452, 457 (D.P.R. 2011).

Plaintiff has the burden of proving that she has become disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 107 S. Ct. 2287 (1987). A finding of disability requires that plaintiff be unable to perform any substantial gainful activity or work because of a medical condition which has lasted or which can be expected to last for a continuous period of at least twelve months. See 42 U.S.C. § 416(i)(1). In general terms, evidence of a physical or mental impairment or a combination of both is insufficient for the Commissioner to award benefits. There must be a causal relationship between such impairment or impairments and plaintiff's inability to perform substantial gainful activity. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 (1st Cir. 1986). Partial disability does not qualify a claimant for benefits. See Rodríguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965); Mercado v. Commissioner of Social Security, 767 F. Supp. 2d 278, 281 (D.P.R. 2010).

Plaintiff argues in her memorandum of law that she has very significant non-exertional limitations and that, considering the burden-shifting of step five of the sequential analysis, a vocational expert was needed in order to determine the extent of erosion on her occupational base. (Docket No. 21 at 2,14). See Goodermote v. Sec'y of Health & Human Svcs., 690 F.2d 5, 7 (1st Cir. 1982). Plaintiff also argues that the administrative law judge did not adequately explain the reduced weight given to consultant reports of a State Agency non-examining psychiatrist as well as the testimony of an examining psychiatric consultant. See

CIVIL 12-1655 (ADC             7

20 C.F.R. § 404.1527(c)(2)(ii). (Docket No. 21 at 3-4). Plaintiff stresses as part of her argument that the administrative law judge applied the incorrect legal standard, that the Medical Vocational Guidelines, 20 § C.F.R. Part 404, Subpart P, Appendix 2 , Tables 1-3 (GRID) was incorrectly used because of the extent of the very significant, severe non-exertional impairments, which would require the use of a vocational expert.  See e.g. Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 42 (1st Cir. 1984). Plaintiff argues that if there are moderate limitations based upon a mental impairment, a vocational expert is required and the GRID is inapplicable even if used as a framework. (Docket No. 21 at 17-18). Making reference to the administrative law judge's conclusions in relation to plaintiff's non-exertional limitations, plaintiff argues that the mental residual functional assessments of Dr. Vecchini and the reports and testimony of Dr. Rodriguez suggest at least moderate limitations, and thus require the testimony of a vocational expert at step five of the sequential inquiry. Plaintiff requests that the final decision of the Commissioner be reversed, or in the alternative that the case be remanded to the Commissioner for necessary further proceedings.

    The Commissioner responds that the Medical Vocational Guidelines were correctly used as a framework for decision-making and that no vocational expert was needed at the administrative hearing since plaintiff's non-exertional limitations are not as significant as painted by her. The Commissioner argues generally that the final decision complies with the substantial evidence rule, and that substantial evidence supports the administrative law judge's determination as to plaintiff's residual functional capacity, particularly when compared to plaintiff's vocational

CIVIL 12-1655 (ADC                                  8

## A.  MEDICAL HISTORY

The administrative law judge found that plaintiff has no significant exertional limitations from a physical standpoint and the bilateral carpal tunnel syndrome that she does have is considered non-severe and stable as of the date of the final decision, this notwithstanding her having been treated for cervico-dorsal myositis, and strain of both shoulders at the State Insurance Fund from March 26, 2001 through August 5, 2003.  (Tr. at 23,24, 25).

Plaintiff's mental impairment apparently began in November 2002.  She was depressed and had panic attacks which lead to physical symptoms. She was prescribed Paxil, Ambien, Vistaril and Wellbutrin.  On July 24, 2004, she resumed treatment for a mental condition and was prescribed Xanax and Paxil and remained relatively stable from 2005 to 2008 with her condition not suffering changes. Xanax was later exchanged for Thorazine and Flouxitine.  A diagnosis of generalized anxiety disorder and recurrent severe major depression without psychotic features remained unchanged. Plaintiff did receive treatment at the State Insurance Fund from February to November 2002 for cervico-dorsal myositis. (Tr. at 439).

A psychiatric evaluation by Dr. Luis F. Iturrino Echeandia, M.D. dated January 17, 2003 resulted in a diagnosis of Axis I: depressive disorder NOS, and Axis III: history of radiculopathy. (Tr. at 400-04).  The prognosis was guarded.

A physical residual functional capacity assessment dated February 19, 2003 by internist Lorena Diaz Trancon, M.D. reflected some exertional limitations in lifting and/or carrying and operating bilateral leg controls. (Tr. at 406-13).  There

CIVIL 12-1655 (ADC                                9

were some postural and manipulative limitations. The physical residual functional capacity assessment was affirmed by internist Jose R. Pesquera-Garcia, M.D.

A psychiatric review technique form dated February 28, 2003 by Dr. Carlos Vazquez reveals affective disorder not satisfying any noted diagnostic criteria. (Tr. at 415-28). Plaintiff was dramatic and evasive, with depressive mood. There were moderate limitations in activities of daily living and difficulties in maintaining social functioning. There were mild limitations in maintaining concentration, persistence and pace. A mental residual functional capacity assessment by Dr. Vazquez reflected no limitations in understanding and memory, and moderate limitations in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and in the ability to sustain an ordinary routine without special supervision. (Tr. at 429-32). There were also moderate limitations in social interaction, and the ability to respond appropriately to changes in the work setting. Dr. Vazquez noted that plaintiff could learn, understand, remember and carry out simple, detailed instructions, make simple decisions, relate to others, and complete a work day. This assessment was affirmed on October 23, 2003 by clinical psychologist Orlando Reboredo, Ph.D. (Tr. at 430).

Plaintiff began treatment with Dr. Jose Crespo-Rafols on August 29, 2003, complaining of pain in the neck and back. She visited the doctor in January, March, May, June and November 2004 and complained of depression and panic attacks. Among the medications she was taking at the time were Flexeril, Relafen and Prednisone. (Tr. at 659-65; 801-04).

On September 15, 2003, Dr. Samuel Mendez, a neurological examining consultant for Social Security, diagnosed chronic lumbalgia and cervicalgia, bilateral carpal tunnel syndrome, and lumbosacral syndrome. Tinnel was positive

CIVIL 12-1655 (ADC                        10

for the hand. Sustained activity for the hands was deemed limited to 15 minutes. (Tr. at 525).

A consultative evaluation by psychiatrist Dr. Armando Caro on September 17, 2003 (the alleged onset date for disability) resulted in a diagnosis of pain disorder associated with a general medical condition and severe major depressive disorder and a poor prognosis. (Tr. at 531-35). Plaintiff's GAF was 55. The doctor noted that plaintiff had the capacity to handle her own funds, and that her capacity for social interacting was impaired based upon her interaction with him as interviewer. The prognosis was poor. (Tr. at 531-32).

Plaintiff visited the hospital emergency room on October 24, 2003 with chest pains and depression.

Neurologist Dr. Alfredo Perez evaluated plaintiff on June 8, 2004 and during the interview plaintiff complained of cervical pain radiating to her shoulders and arms, worsening with movements and some positions. She also stated having numbness as well as cramps in the hands. He diagnosed bilateral carpal tunnel syndrome, low back pain and cervical myositis. (Tr. at 616-23).

A physical residual functional capacity assessment by Dr. Gilberto Fragoso Ledesma dated July 6, 2004 reflected some exertional limitations due to carpal tunnel syndrome but is otherwise unremarkable. (Tr. at 625-32). This assessment was affirmed by Dr. Pesquera Garcia on March 7, 2005.

On October 14, 2004, Dr. Roque Stella prepared a psychiatric review technique form and found affective disorder containing depressive syndrome characterized by anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, decreased energy, feelings of guilt or worthlessness and difficulty concentrating or thinking. (Tr. at 641-54). He found moderate functional

CIVIL 12-1655 (ADC                             11

limitations under Listing 12.04.  The psychiatric review technique form was reviewed by psychiatrist Dr. Luis R. Vecchini and affirmed as written on March 8, 2009. (Tr. at 653).  A mental residual functional capacity assessment was also performed and some moderate limitations were noted in ability to understand and remember detailed instructions, to maintain attention and concentration for extended periods, and in the ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances.  Dr. Roque Stella noted that the 31-year old claimant alleged a mental condition since February 4, 2002.  He stated that the evidence reveals a claimant with depressed mood, somatic complaints.  The preponderance of the evidence reflects a significant condition. Plaintiff could understand, execute and remember only simple instructions and work-like procedures.  She could sustain attention for up to two hour intervals and maintain persistence and pace.  She could interact with others on a low contact setting.  (Tr. at 657).

At the February 1, 2010 administrative hearing, plaintiff waived her right to be present and consequently did not testify.  She was represented by attorney Alberto Diaz, Esq., an experience practitioner.  A vocational expert was apparently available through telephone. After a lengthy exchange between the administrative law judge and counsel, Dr. Alberto Rodriguez-Robles, internist, was called to testify as plaintiff's treating physician.[1] He stated that he had seen plaintiff on February 28, May 20, and September 17, 2002.  He then saw her for the Disability Determination Service on July 15, 2004, and last saw her on January 26, 2010.

---

[1] Dr. Hector A. Puig, a vocational expert, was available by telephone during the hearing but it was determined that his testimony was not necessary. (Tr. at 19, 807).

(Tr. at 820-21). He testified that plaintiff, following the criteria of the DSM-IV-TR, in axis I, had a major depressive disorder, described in the record as a single episode. (Tr. at 822). "That is the only one and it has been continuous over time." On July 15, 2004, he felt that plaintiff's condition had worsened. (Tr. at 634-39). He determined that her mental condition affected her work because she was restless, nervous and frightened and could not concentrate, forgetting things easily. The prognosis was poor.

Dr. Rodriguez-Robles testified further that plaintiff met the Listings 12.04A and 12.04B, manifested be anhedonia or pervasive loss of interest in almost all activities, sleep disturbance, psychomotor retardation, decreased energy, feelings of worthlessness, and difficulty concentrating. (Tr. at 820-833), This symptomatology had resulted in marked restrictions of daily activities, marked difficulties in maintaining social functioning, concentration, persistence, and pace, and two or more episodes of decompensation, each of extended duration.

### B. ANALYSIS

#### 1. RESIDUAL FUNCTIONAL CAPACITY: GRID

After considering the consulting psychiatrist's testimony, the administrative law judge noted that plaintiff's psychiatric treatment had been variable and sporadic, and that even with such consistency, the record reflected that she responded well to treatment. It also reflected that the gaps in treatment were unexplained. (Tr. at 27, 28). In relation to plaintiff's residual functional capacity, when a nonexertional limitation is found to impose no significant restriction on the range of work a claimant is exertionally able to perform, reliance on medical-vocational guidelines, known as the Grid, is appropriate. See Ortiz v. Secretary of Health and Human Services, 890 F. 2d 520, 524 (1st Cir. 1989); Rodriguez-

Gonzalez v. Astrue, 854 F. Supp. 2d at 185;  Even where a nonexertional impairment is significant, the Grid may still be used as "a framework for consideration of how much the individual's work capability is further diminished." 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)(2) (1997); Ortiz v. Sec'y of Health & Human Servs., 890 F.2d at 524.

> If the applicant's limitations are exclusively exertional, then the Commissioner can meet [the] burden through the use of a chart contained in the Social Security regulations.  20 C.F.R. § 416.969; Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, App. 2, tables 1-3 (2001), cited in 20 C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L. Ed. 66 (1983).  "The Grid," as it is known, consists of a matrix of the applicant's exertional capacity, age, education, and work experience.  If the facts of the applicant's situation fit within the Grid's categories, the Grid "directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited in 20 C.F.R. § 416.969. However, if the applicant has nonexertional limitations (such as mental, sensory, or skin impairments, or environmental restrictions such as an inability to tolerate dust, id. § 200(e))[,] that restrict [her] ability to perform jobs [she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision."  20 C.F.R. § 416.969a(d) (2001).

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001); Rodriguez-Gonzalez v. Astrue, 854 F. Supp. 2d at 185.  In the case before the court, the administrative law judge correctly used Medical-Vocational Rule 204.00, codified in 20 C.F.R., Part 404, Subpart P, Appendix 2, as a framework for decision-making, since the matrix cannot otherwise be used under the circumstances. Specifically, the administrative law judge noted that while plaintiff's ability to perform work at all exertional levels was compromised by non-exertional limitations, those limitations had little or no effect on the occupational base of unskilled work at all exertional levels. (Tr. at 29).  The administrative law judge noted that the Social Security Administration has taken notice of the existence of approximately 1,600 separate unskilled

CIVIL 12-1655 (ADC                        14

occupations in eight broad occupational categories, each occupation representing numerous jobs in the national economy. (Tr. at 29). Plaintiff was found to be able to adjust to the requirements of such jobs considering her residual functional capacity.

### 2. OPINION OF DR. JOSE CRESPO-RAFOLS, TREATING PHYSICIAN

The administrative law judge on remand was directed by the Appeals Council to give consideration to the treating source opinion of Dr. Crespo-Rafols, and to explain the weight given to such opinion. The administrative law judge did just that. Of course, such consideration complies with one of the directives of the Appeals Council but does not necessarily comply with the requirements of the substantial evidence rule. Nevertheless, when considering the record as a whole, the consideration becomes one of the components of such compliance, as is further explained below.

The administrative law judge attempted to further develop the record by seeking further information from Dr. Crespo-Rafols, with no success. Unanswered was the inquiry into possible malingering, the use of plaintiff's father's prescription medication for pain, as well as the request for Albuterol when plaintiff's lungs were clear. (Tr. at 25)[2]. The administrative law judge noted that Dr. Crespo-Rafols had made notations in the medical records that plaintiff had been pain-free and the prescribed medication had helped her improve her condition.

### 3. CARPAL TUNNEL SYNDROME

---

[2]Dr. Rodriguez-Robles testified that plaintiff could have suffered from panic attacks which would have been a trigger to seek Albuterol. As to the malingering, the doctor noted that plaintiff does present real symptoms as reflected by the treatment she has received. (Tr. at 825).

CIVIL 12-1655 (ADC                    15

The Appeals Council directed the administrative law judge to give consideration to plaintiff's maximum residual functional capacity and provide appropriate rationale in support of the assessed limitations, including the carpal tunnel syndrome (a nonexertional impairment).  (Tr. at 64).  However administrative law judge Haaversen determined that there were no corresponding manipulative restrictions identified on the ability to function. (Tr. at 20).  She found the carpal tunnel syndrome to be non-severe since the condition was rated as mild on November 21, 2002.  On February 29, 2008, an electromyogram and nerve conduction study by Dr. Arturo J. Lopez-Rivera showed mild sensorial median neuropathy without evidence of carpal tunnel syndrome. (Tr. at 801-04). The administrative law judge's reasoning for a non-severe finding in that there was not even evidence of the use of wrist braces (a conservative form of treatment) in the medical record, and no recommendation for surgery.  (Tr. at 23). Cf. Jones v. Astrue, 623 F.3d 1155, 1158 (7th Cir. 2010). However, a hand surgeon apparently prescribed bilateral hand splints, therapies, B6 and neurontin. (Tr. at 393).  Plaintiff denied improvement with the therapy.

### 4. OPINION OF TREATING PHYSICIAN

The administrative law judge considered plaintiff's exertional limitations as non-severe in her rationale, governed in part by 20 C.F.R. § 404.1529, SSR 96-4p, SSR 96-7p.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19 (1st Cir. 1986).  The factors to be weighed under the correct standard are the following:

    (I)   Your daily activities;
    (ii)  The location, duration, frequency, and intensity of your
         pain or other symptoms;
    (iii)  Precipitating and aggravating factors;

CIVIL 12-1655 (ADC                16

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v)  Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); see also SSR 96-7p. (Tr. at 24).

The administrative law judge did not give controlling weight to the reports of three treating physicians because they were not well supported nor were they consistent with the preponderance of the medical evidence of record. The administrative law judge also noted that there were not sufficient satisfactory explanations for the bases of the conclusions of the treating physicians. Specifically, although the treating psychiatrist testified that plaintiff's condition met the listings, the administrative law judge concluded that the listings requirements were not satisfied, and reasonably explained that conclusion. (Tr. at 23-24). The administrative law judge relied more on the evaluations of the state agency qualified medical personnel in reaching her findings as to the extent of plaintiff's limitations in terms of severity. (Tr. at 26.)   While plaintiff has argued that greater weight should be given to the medical evidence from her treating physicians, it is well settled that even the opinions of treating physicians are not necessarily entitled to greater weight merely because they are those of treating physicians. Rodríguez Pagán v. Secretary of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982); Pérez v. Secretary of Health, Educ. & Welfare, 622 F.2d 1, 2 (1st Cir. 1980); Camacho v.

CIVIL 12-1655 (ADC                    17

Astrue, ___F. Supp. 2d ___, 2013 WL 5636687 at *4 (D.P.R.2013); Rosado-Lebrón v. Comm'r of Soc. Sec., 193 F. Supp. 2d 415, 417 (D.P.R. 2002).  The administrative law judge is not always required to give such opinions controlling weight.  See 20 C.F.R. § 404.1527(d); Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987); cf. Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221 (D.P.R. 2003).  The administrative law judge found that the preponderance of the medical evidence is not consistent with plaintiff's allegations, and also did not give full credibility to the allegations because they were not compatible with the information contained in the reports of the non-treating state agency physicians, as well as the medical history.  See 20 C.F.R. § 404.1527(f); SSR 96-6p.[3]

### D.  CONCLUSION

I conclude that the final decision reflects a reasonable balancing and weighing of evidence and the making of credibility determinations by the administrative law judge.  See Gray v. Heckler, 760 F.2d 369, 374 (1st Cir. 1985); Tremblay v. Sec'y of Health & Human Servs., 676 F.2d 11, 12 (1st Cir. 1982); Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).  The court's function is to ascertain whether there is evidence in the record to sustain the administrative law judge's reasoning.   "Substantial evidence" is more than a "mere scintilla," see Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct.

---

[3] Plaintiff has submitted a thoughtful memorandum of law accompanied by specific case law, such as Figueroa-Rodriguez v. Secretary of Health & Human Services, 845 F.2d 370 (1st Cir. 1988) and Polanco-Quinones v. Astrue, 477 Fed. Appx. 745 (1st Cir. 2012).  I have read these decisions and understand why they are submitted, but I do not find them controlling or persuasive although vaguely analogous.

CIVIL 12-1655 (ADC                               18

1420 (1971), in other words, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  See id.; see also Currier v. Sec'y of Health & Human Servs., 612 F.2d 594, 597 (1st Cir. 1980).  Along that line, the power to resolve conflicts in the evidence lies with the Commissioner, not the courts. Id.; see Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2-3 (1st Cir. 1987).  In the resolution of such conflicts, I cannot say that the substantial evidence rule has been violated.  This is not a one-sided administrative record but rather a record replete with conflicting medical evidence, assessments and conclusions welcoming the careful consideration of an administrative law judge, the type of consideration received in this case, regardless of whether there is universal agreement as to the conclusion.  The administrative law judge must adequately explain his treatment or consideration of the opinions of treating physicians so that a court on review may determine if the substantial evidence rule has been complied with. See e.g. Taylor v. Astrue, 899 F. Supp. 2d 83, 88-89 (D. Mass. 2012).  The administrative law judge must supply good reasons in the weighing process.  There are strong opinions of disabling impairments on the part of Dr. Alberto Rodriguez-Robles, psychiatrist, Dr. Ronald Malave, psychiatrist, of Centro de Salud Conductual del Oeste, and Dr. Jose Crespo-Rafols, internist, while there are conclusions of a milder nature by, Dr. Roque Stella, psychiatrist, Dr. Carlos Vazquez, psychologist, Dr. Luis F. Iturrino Echeandia, psychiatrist, Dr. Alfredo Perez Canabal, neurologist, Iris A. Acevedo-Marty, neurologist, Dr. Elvin Lugo Paredes, neurologist, Dr. Armando Caro, psychiatrist and Dr. Samuel Mendez, neurologist.   Dr. Gilberto Fragoso Ledesma submitted a physical residual functional capacity assessment which reflected some limitations but the administrative law judge rejected the assessment as unsupported by the record.

CIVIL 12-1655 (ADC                          19

These opinions also reflect differences between treating and non-treating physicians and mental health professionals, differences which were carefully weighed by the administrative law judge as reflected in her findings.  For example, Dr. Rodriguez-Robles, the treating psychiatrist who testified at the hearing had seen plaintiff one time during the covered period, on July 15, 2004, and had seen plaintiff a total of five times in eight years, hardly the frequency required of a treating source.  An accurate longitudinal picture is thus missing.   The administrative law judge noted that Dr. Malave's reports conflicted with the treatment records of Centro de Salud Conductual del Oeste upon which he based his opinions.  Such a balancing invokes the axiom that if there is a substantial basis in the record for an administrative law judge's decision, the court must affirm the decision, whether or not another conclusion is possible.  See Ortiz v. Sec'y of Health & Human Svcs., 955 F.2d 765, 769 (1st Cir. 1991); Evangelista v. Sec'y of Health & Human Servs., 826 F.2d at 144.  While there are areas of disagreement, the final decision is not unreasonable, even at step five of the sequential process where the burden of proof has shifted away from plaintiff.

    In view of the above, I find that the administrative law judge has complied with the requirements of the substantial evidence rule.  See Richardson v. Perales, 402 U.S. at 401, 91 S.Ct. 1420 (1971).   I therefore affirm the final decision and dismiss this action.  The Clerk will enter judgment accordingly.

    At San Juan, Puerto Rico, this 7th day of February, 2014.

                                               S/ JUSTO ARENAS
                                      United States Magistrate Judge

CIVIL 12-1655 (ADC                    20